IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN JOSEPH KRATOCHVIL, #469746, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:24-cv-01042 ) |
| FRANK STRATA, et al., | ) JUDGE RICHARDSON ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

John Kratochvil, an inmate of the Trousdale Turner Correctional Center (TTCC), filed a pro se civil rights complaint in the Eastern District of Tennessee (while he was housed in that District, at the Northeast Correctional Complex (NECX)) against Tennessee Department of Correction (TDOC) Commissioner Frank Strada, Assistant Commissioner L.R. Thomas, and NECX Warden Brian Eller. (Doc. No. 2.) The Complaint seeks declaratory and injunctive relief for alleged constitutional violations arising from a new TDOC policy, described in a July 15, 2024 memo from Defendant Thomas, that restricts inmates' ability to order books and other printed material. The Eastern District granted Plaintiff pauper status, dismissed Warden Eller as a defendant, and transferred the case to this District. (Doc. Nos. 5, 6.) Days later, Plaintiff was transferred to TTCC.

After his transfer to TTCC, Plaintiff filed two motions: a Motion for Reconsideration of the Eastern District's dismissal of Warden Eller (Doc. No. 11), and a Motion to Amend the Complaint. (Doc. No. 12.) The case is before the Court for ruling on Plaintiff's motions and for initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

# I. ANALYSIS OF THE COMPLAINT AND PENDING MOTIONS

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

The Eastern District conducted a partial review of the Complaint under the PLRA and determined that it failed to state a viable claim against the NECX warden. (Doc. No. 5.) The court found that the only allegation against Warden Eller was that he denied Plaintiff's appeal of a grievance related to NECX's implementation of TDOC's new book-ordering policy (the crux of which is that, per a July 2024 memo from Assistant Commissioner Thomas, "books are now to be ordered through staff from only two (2) distributors for non-religious books" (Doc. No. 2 at 7)),

and that the mere denial of a grievance appeal did not support an inference that Eller was personally involved in any deprivation of Plaintiff's constitutional rights. (Doc. No. 5 at 3.) Consequently, the Eastern District dismissed Eller from this action.

Plaintiff asks this Court to reconsider the dismissal of Eller, arguing that as Warden, Eller "is the head of the administration" at NECX and therefore responsible for the administration's enforcement of TDOC's new book-order policy. (Doc. No. 11.) However, in light of Plaintiff's transfer to a different TDOC facility, and the fact that he named other TDOC officials as defendants, any claim to declaratory and injunctive relief specific to Warden Eller[1] and the NECX administration's implementation and enforcement of TDOC policy is moot. *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024) ("A person's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.") (citation and internal quotation marks omitted); *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (finding transferred prisoner's claim moot "[t]o the extent that [he] asks for injunctive relief against officials at [former prison]"). Therefore, Plaintiff's Motion to Reconsider the dismissal of Defendant Eller (Doc. No. 11) will be denied.

Plaintiff's claims will be allowed to proceed against the TDOC Commissioner and Assistant Commissioner. *See Johnson v. Collins*, 564 F. Supp. 2d 759, 765 (N.D. Ohio 2008) (allowing injunctive claim to proceed where allegedly unconstitutional action was taken pursuant to state-wide policy, and although plaintiff had been transferred to different state prison, he "may [yet] be able to show a violation of his rights, and that the violation of his rights is on-going and continuing into his new prison within the same prison system"). The Complaint alleges that TDOC policy allows printed material to be received "directly from a publisher or recognized distributor,"

---

[1] The Court notes that the Complaint does not explicitly seek injunctive relief against Eller, but only against "Commissioner Frank Strada and Assistant Commissioner Thomas." (Doc. No. 2 at 17.)

and that effective July 15, 2024, the number of distributors of non-religious books recognized by TDOC was lowered to two, and the number of books (religious and non-religious) an inmate is allowed to order was limited to five. (Doc. No. 2 at 7–8, 10, 12; *see also* Doc. No. 2-1 at 18.) Prior to the enactment of this policy change, Plaintiff "ha[d] been ordering and receiving books from Edward R. Hamilton Bookseller Company for approximately thirteen (13) years, as well as from other distributors." (Doc. No. 2 at 7.) The Complaint alleges Plaintiff's "belie[f] that the new highly restrictive policy on books is because of contraband coming into the prison through the mail even though this conclusion has no support." (*Id.* at 8.) It further alleges that the restriction conflicts with another TDOC policy that remains in force, one which allows inmates to receive printed materials "in an unlimited amount." (*Id.* at 12.) Plaintiff claims that the new restrictions violate his due process and First Amendment rights, as well as his rights under state law. (*Id.* at 6, 17.)

The Sixth Circuit considered a policy restricting inmates' access to books and other printed materials in *Bethel v. Jenkins*, No. 16-4185, 2017 WL 4863118 (6th Cir. Sept. 22, 2017), wherein it gave the following account of the governing law:

> The First Amendment protects the right to receive information and ideas. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). "The Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832 (1974)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has identified four factors to aid in making this determination. *Id.* First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* "Without this, the policy is unconstitutional, and 'the other factors do not matter.'" *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 646 (6th Cir. 2015) (quoting *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994)). The remaining three factors must be balanced together: "whether there are alternative means of exercising the right that remain open to prison inmates"; "the impact [that]

accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and whether there are "ready alternatives" available "that fully accommodate[ ] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 90–91.

*Id.* at *2. The Sixth Circuit found that Bethel successfully pled a First Amendment claim based on a prison policy that "prevented him from receiving printed materials, denying him his ability to exercise his right to free speech in violation of the First Amendment." *Id.* at *1–2. At this early stage, without knowing TDOC's justification for limiting its inmates' ability to receive books from other distributors (such as the ones from which Plaintiff had previously ordered without difficulty), the Court will allow this First Amendment claim to proceed against Defendants Strada and Thomas.

As to the Motion to Amend (Doc. No. 12), the Court construes this filing under Federal Rule of Civil Procedure 15(d), as "a supplemental pleading setting out [a] transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). So construed, the Motion (Doc. No. 12) will be granted, and the Motion (which reads like a complaint, except for its very first sentence) will be considered a supplemental complaint.

Via the supplemental complaint, Plaintiff adds a claim against Defendants Strada and Thomas for First Amendment retaliation, which allegedly occurred "one week following the Judgment Order" of the Eastern District partially screening the Complaint and transferring the case to this District. (Doc. No. 12 at 1.) The claimed retaliatory action was Plaintiff's relocation to TTCC—a prison within this District that is notoriously violent and is currently under federal civil rights investigation.[2] (*Id.* at 1–2.) Plaintiff alleges that the transfer cost him his "good paying and rewarding job as a tutor in the GED program" at NECX; he does not have a job at TTCC. (*Id.* at

---

[2] *See* https://www.justice.gov/opa/pr/justice-department-announces-civil-rights-investigation-conditions-tennessees-trousdale (last visited Nov. 26, 2024).

2.) He also alleges that two days after his transfer, another inmate "who is filing a similar lawsuit" was likewise transferred to TTCC. (*Id.*) Plaintiff asks the Court to declare that his rights have been violated and to order his return to NECX and reinstatement to his old job there. (*Id.* at 3.)

To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the prisoner's protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)) (internal quotation marks omitted). Here, Plaintiff alleges that he filed suit against Strada and Thomas, and that those officials then ordered his transfer to TTCC shortly after his filing survived an initial court review. "Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the [State] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Id.* at 473. The filing of a nonfrivolous grievance or lawsuit against a prison official is protected conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). And "a prison transfer . . . can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill*, 630 F.3d at 474. For purposes of initial review, the Court finds it reasonable to infer from Plaintiff's allegations that he might plausibly establish the protected conduct, adverse action, and causal connection elements of his First Amendment retaliation claim. That claim will be allowed to proceed.

## II. CONCLUSION AND FURTHER PROCEEDINGS

As discussed above, Plaintiff's Motion to Reconsider (Doc. No. 11) is **DENIED**. His Motion to Amend (Doc. No. 12) is **GRANTED**. The Clerk **SHALL** re-name Docket Number 12 on the docket of this case, as Plaintiff's "Supplemental Complaint."

Plaintiff's pleadings state nonfrivolous claims against Defendants Strada and Thomas. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for each of these Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE