JOHN JOSEPH KRATOCHVIL,

    Plaintiff,

v.

FRANK STRADA, et al.,

    Defendants.

Case No. 3:24-cv-01042

Judge Eli J. Richardson
Magistrate Judge Luke A. Evans

To:    The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants Frank Strada and L.R. Thomas's Motion to Dismiss Plaintiff John Joseph Kratochvil's Complaint (Doc. No. 2) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 23). Plaintiff opposes Defendants' motion, and the issue has been fully briefed.

For the reasons that follow, the Magistrate Judge will recommend that the Court deny Defendants' Motion to Dismiss.

## I.    Background

### A.    Factual Background

At the time Plaintiff filed this complaint, he was an inmate incarcerated at the Northeast Correctional Complex (NECX) in Mountain City, Tennessee. Plaintiff alleges that NECX staff instituted a rule reducing inmates' ability to receive books and other publications in the facility. (Doc. No. 2.) According to Plaintiff, the Tennessee Department of Corrections (TDOC) promulgated by memorandum (Doc. No. 2-1 at 18) a policy that limits the number of distributors and vendors from which inmates may order and receive books and other printed materials (*id.*).

Plaintiff states that internal NECX policy requires that inmates order non-religious books from one of two approved book distributors, and the policy similarly restricts the number of books an inmate may order to five. (*Id.*) At the time of his initial Complaint, Plaintiff asserted that problems with implementing the new policy had resulted in "inmates hav[ing] been completely cut-off from all possible ways to order and/or receive books and other printed material." (*Id.* at 10.)

Upon first learning of the policy change in April 2024, before the TDOC memorandum was circulated, Plaintiff raised his disagreement with administrators through the NECX internal grievance process multiple times. (Doc. No. 2.) Plaintiff first filed a complaint with the prison's Grievance Board on May 6, 2024, and the Grievance Board issued a response on May 9, 2024. (*Id.*) Dissatisfied with the response, Plaintiff requested a hearing before the board and, after a May 16, 2024 hearing, the board agreed to forward Plaintiff's grievance to NECX Warden Brian Eller. (*Id.*) On May 20, 2024, Eller responded and denied Plaintiff's grievance because the policy was "only temporary until a vendor" could be approved. (*Id.* at 3.) As a result, Plaintiff then appealed Eller's decision to Defendant Thomas's office, but the office denied the appeal without further comment. (Doc. Nos. 2, 2-1.)

On June 18, 2024, Plaintiff submitted another complaint about the matter to the Grievance Board. (*Id.*) In response, Plaintiff was told by the NECX Associate Warden of Treatment that TDOC has the authority to limit which vendors may be approved and regulate which books may be ordered based on their content. (*Id.*) On appeal, Eller concurred with the decision, and the subsequent appeal to TDOC was denied by Thomas's office. (*Id.*)

**B.** **Procedural History**

Plaintiff initiated this Section 1983 action in the Eastern District of Tennessee on August 20, 2024, alleging violations of his rights under the First and Fourteenth Amendments to the Constitution, violations of his rights under the Tennessee Constitution, and violations of Tennessee

2

statutes and regulations. (Doc. No. 2.) Alongside his Complaint, Plaintiff applied to proceed *in forma pauperis* (IFP). (Doc. No. 1.) The Eastern District approved Plaintiff's application to proceed IFP and, on August 27, 2024, the court issued a Memorandum Opinion and Order that partially screened Plaintiff's initial complaint as required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). (Doc. No. 5.)

On initial screening, the Eastern District found that Plaintiff's claims against Eller did not give rise to a plausible inference that Eller was personally involved in the policies at issue and, as a result, were insufficient for showing Eller could be held liable for any alleged violations of Plaintiff's constitutional rights. (*Id.*) For that reason, the court dismissed Eller as a defendant. (*Id.*)

With Eller dismissed, the court reasoned that, because Plaintiff was ultimately challenging policies put forth and enforced by TDOC personnel operating out of Nashville, Tennessee, venue in the Eastern District was inappropriate. (*Id.*) The case was subsequently transferred to this Court on August 27, 2024. (Doc. No. 7.) Within days, Plaintiff was permanently transferred out of NECX to the Trousdale Turner Correctional Center (TTOC) in Harstville, Tennessee. (Doc. No. 13.)

Because the Eastern District ended its screening after determining that the case should be transferred, it deferred screening the remainder of Plaintiff's Complaint. Upon its initial review, this Court addressed the claims against Strada and Thomas; denied Plaintiff's motion to reconsider the Eastern District's decision to dismiss Eller (Doc. No. 11); and granted Plaintiff's Motion to Supplement[1] (Doc. No. 12).

After reviewing Plaintiff's initial and supplemental complaints, the Court permitted Plaintiff's original First Amendment claims against Strada and Thomas to proceed. (Doc. No. 13.)

---

[1] Although styled as a Motion to Amend his Complaint (Doc. No. 12), the Court construed it as a Motion to Supplement under Federal Rule of Civil Procedure 15(d) (Doc. No. 13).

The Court further found that Plaintiff raised in his Supplemental Complaint plausible claims of First Amendment retaliation against the Defendants stemming from his transfer to TTCC after undertaking the grievance process and then filing this action. (*Id.*) The Court referred the case to the Magistrate Judge to conduct further proceedings and dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (*Id.*)

Defendants filed their Motion to Dismiss and Memorandum in Support on April 10, 2025 (Doc. Nos. 23, 24), to which Plaintiff responded in opposition (Doc. No. 26). Defendants then filed an optional reply brief. (Doc. No. 27.) The motion has been fully briefed and is ripe for consideration.

## II.      Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked

4

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff appears *pro se*, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.    Analysis**

Two First Amendment claims survived the Court's initial screening. As construed, Plaintiff challenges the constitutionality of TDOC's so-called "two-vendor" policy facially and as-applied. First, Plaintiff argues that the two-vendor policy as-applied has resulted in a blanket ban on book orders and, as a result, Plaintiff has not been permitted to order or receive books from any source. Second, Plaintiff argues that, even if the two-vendor policy was operational, it impermissibly restricts his rights under the First Amendment because it effectively creates a list of excluded publications and restricts the reading material available to him.

However, in support of their Motion to Dismiss, Defendants sidestep the constitutional question and argue instead that Plaintiff's First Amendment claim must be dismissed because Plaintiff does not have standing to seek redress.

Relatedly, Plaintiff states that he was transferred from NECX to TTCC because he challenged this policy internally via the grievance process and by filing this instant suit. The Court will evaluate each argument below.

### A. Standing to Bring First Amendment Right to Free Speech

"The First Amendment protects 'the right to receive information and ideas,' which, as applicable in the prison context, extends to the right to receive mail and to access reading material." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). But it is also indisputable that there is an "'irreducible constitutional minimum' of standing" required for a party to seek to right an alleged legal wrong in federal court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The Supreme Court has recognized three necessary elements a plaintiff must satisfy to have standing. To survive the instant motion, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61). Here, Defendants argue only that Plaintiff has not adequately pleaded that he suffered an injury in fact.

#### 1. Injury in Fact

To show he has suffered an injury in fact, Plaintiff must have sufficiently pleaded that he: (1) "suffered 'an invasion of a legally protected interest'" (2) "that is 'concrete and particularized'" and that is (3) "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560). Here, Defendants argue that Plaintiff has failed to show facts that he suffered a concrete and particularized injury and has instead pleaded hypothetical and conjectural injuries. (Doc. No. 24.) Plaintiff disagrees and argues that he has pleaded sufficient facts to satisfy the second and third injury in fact elements. (Doc. No. 26.)

6

The Court finds that Plaintiff has sufficiently pleaded facts that, on their face, plausibly show he suffered a concrete and particularized invasion of his First Amendment right to receive information and ideas, including mail and reading material, that is not merely conjectural or hypothetical.

In support of their argument, Defendants mischaracterize Plaintiff's allegations. While not the most artfully pleaded, Plaintiff plainly states that, after the two-vendor policy took effect, Plaintiff was barred from ordering or receiving any books or publications. (Doc. No. 2.) Defendants rely on Plaintiff's broad generalizations of the impact of the policy to argue that he, himself, suffered no particular harm. Moreover, they suggest that he is attempting to rectify injuries allegedly suffered by other inmates or third-party publishers. However, Plaintiff states, in full:

> 3. The Plaintiff has been ordering and receiving books from Edward R. Hamilton Bookseller Company for approximately thirteen (13) years, as well as from other distributors.
>
> 4. Plaintiff sent in a book order the first week in April to come from Hamilton Books, and when he received no answer concerning the Trust Fund approval, he questioned Unit Manager Reburn since Trust Fund requests from Complex III go to him for approval.
>
> 5. Plaintiff was told that all book orders coming to him for approval will be denied until the situation with Union Supply is settled.

(*Id.* at 7.) Frustrated by this, Plaintiff used the internal grievance process to object to "banning [inmates] from ordering books." (Doc. No. 2-1.) Instead of disputing Plaintiff's contention, the Warden and staff at NECX stated simply that "this [barring Plaintiff from ordering books] is only temporary until a vendor can be approved." (*Id.*)

For purposes of Defendants' Motion to Dismiss, the Court finds that Plaintiff has pleaded sufficient facts plausibly showing he suffered a concrete and particularized invasion of his rights sufficient to be an injury in fact. Plaintiff has a right to receive reading materials. TDOC changed the policy governing his ability to order books. And, as the

7

policy was applied, he was unable to order or receive any books or publications from any source outside the facility.

Because the parties only briefed the injury in fact requirement, the Court will not examine the other necessary elements of Plaintiff's standing to bring suit.[2]

### B.      First Amendment Retaliation

By alleging that Defendants punished him for challenging the TDOC book policy through the internal grievance process and by filing the instant action, Plaintiff raises a retaliation claim that implicates "the First Amendment's protection of the right to 'petition the Government for a redress of grievances.'" *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (quoting U.S. Const. amend. I). "When a prison official retaliates against a prisoner for exercising the First Amendment right to access the courts or to file a grievance, the official '"threatens to inhibit exercise of the . . . right"' and violates the Constitution." *McClure v. Johnson*, Case No. 1:15-cv-00035, 2019 WL 13444614, at *15 (M.D. Tenn. July 24, 2019) (alteration in original) (quoting *Thaddeus-X*, 175 F.3d at 394 n.4), *report and recommendation adopted*, 2019 WL 13444613 (M.D. Tenn. Aug. 13, 2019).  To succeed on his First Amendment retaliation claims against Defendants, Plaintiff must show that:

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 394).

---

[2]      Where parties choose not to raise arguments at this stage, the Court declines to do so for them. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, NO. 3:19-cv-00469, 2021 WL 2021436, at *7 n.13 (M.D. Tenn. May 20, 2021) (finding that "the Court does know that when Plaintiffs did *not* make the argument when it was time to make it, it did not feel compelled to make it for them—especially since, for all the Court knew, Plaintiffs did not make it because they . . . felt *constrained to agree* with" the opposing party on some issue) (emphasis in original).

Here, Plaintiff has plainly satisfied the first element because his "undisputed First Amendment right to file grievances against prison officials on his own behalf" is protected conduct. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000).

Defendants argue that Plaintiff failed to satisfy either of the remaining elements because Plaintiff has not shown that his transfer from NECX to TTCC had a sufficient deterrent effect as to constitute an "adverse action" and because, even if the Court found otherwise, Plaintiff has failed to demonstrate that there is a causal connection between Plaintiff engaging in a protected activity and the alleged adverse action of transferring Plaintiff to TTCC. (Doc. No. 24.)

### 1. Transfer as a Sufficiently Adverse Action

Defendants first argue that Plaintiff has failed to demonstrate that his transfer from NECX to TTCC was "an adverse action" for purposes of a First Amendment retaliation claim. (Doc. No. 24.) "An adverse action is one that is 'capable of deterring a person of ordinary firmness' from exercising the constitutional right in question[,]" but "'[a]ctual deterrence need not be shown.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (first quoting *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002), and then quoting *Harbin–Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005)). This Court has explained that "'[e]ven though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the [State] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights.'" *Atkins v. Sutton*, No. 3:25-cv-115, 2026 WL 18902, at *3 (M.D. Tenn. Jan. 2, 2026) (quoting *Hill*, 630 F.3d at 473). "'[A] prison transfer . . . can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner.'" *Id.* (quoting *Hill*, 630 F.3d at 474).

Defendants maintain that Plaintiff's transfer to TTCC "does not demonstrate a deterrent effect on Plaintiff which would make him less likely or able to pursue this litigation." (Doc. No. 24

at 10.) Defendants assert that Plaintiff has not met his burden on this point because the allegations involving the consequences of his transfer to TTCC "are wholly conclusory and disconnected from fact[,]" (*id.* at 9.) and because the loss of Plaintiff's job at NECX is not a deterrent to carrying on with this action because he was granted leave to proceed IFP and therefore can continue litigating regardless of whether he has little or no money remaining in his trust account (*id.* at 10–11).

Plaintiff disputes Defendants' arguments on both points, arguing that a transfer from the relatively well-functioning NECX facility to TTCC is fundamentally adverse because of TTCC's reputation as "one of, if not, the most violent prisons in Tennessee" that is currently under a federal investigation for its conditions and the civil rights violations that have allegedly occurred there. (Doc. No. 12 at 11–12.) Further, Plaintiff asserts that the transfer resulted in his losing "a good paying and rewarding job as a tutor" and, in losing employment and income, he will have difficulty paying the filing fee for this case. (*Id.* at 12.)

The Court is not persuaded that Plaintiff's allegations regarding the consequences of his transfer to TTCC are "wholly conclusory and disconnected from fact" as Defendants assert. The Court does find Plaintiff's assertion that he, as an inmate unaffiliated with any gang present at TTCC, will automatically be subjected to robberies and beatings is too speculative. However, this Court has recognized that TTCC is a uniquely problematic facility. It is and has been under federal investigation and it is notoriously violent. *Atkins*, 2026 WL 18902, at *3. This Court has further explained that, at TTCC, Plaintiff "is afforded far less outdoor recreation time, it often takes 'months or years' to acquire a semi-skilled or skilled job assignment, church services are inconsistently held, and gang violence and drug use are rampant." *Id.* As the Court explained in *Atkins*, "[a] reasonable jury could conclude that a transfer to TTCC is capable of deterring a person of ordinary firmness from continuing to engage in protected conduct such as filing a lawsuit." 2026

WL 18902, at *3. This is further bolstered by the fact that a transfer to TTCC has been recognized as presenting foreseeable consequences "such as the loss of property; loss of a high-wage job; loss of participation in rehabilitative, vocational, and educational programs; loss of more lenient access to recreation and the law library; and transfer to an institution housing more violent, higher-classification inmates[.] *Adams v. Lewis*, No.: 1:22-CV-125, 2024 WL 1539426, at *6 (E.D. Tenn. Apr. 9, 2024) (internal citations omitted).

The Court finds that Plaintiff has sufficiently pleaded facts that his transfer to TTCC was an adverse action for purposes of a First Amendment retaliation claim.

### 2. Whether Adverse Action was Motivated by Plaintiff's Protected Conduct

Defendants next argue that, even if the Court found Plaintiff's transfer to TTCC was an adverse action, which the Court finds, Plaintiff's claim for retaliation must fail because he has not pleaded sufficient facts that his transfer to TTCC was motivated, in whole or in part, by Plaintiff's protected conduct. (Doc. No. 24.) Defendants focus solely on Plaintiff's "book-ordering litigation" and do not address the multiple grievances Plaintiff filed before this action. (*Id.*)

Causation, for purposes of a First Amendment retaliation claim, "is typically a factual issue" and Plaintiff must demonstrate "(1) 'that the adverse action was proximately caused by an individual defendant's acts' and (2) 'the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right[.]'" *Adams*, 2024 WL 1539426, at *6 (quoting *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012)).

Importantly, it is difficult to prove an individual's motive, so courts have explained that, at this stage of litigation, "circumstantial evidence, such as 'the disparate treatment of similarly situated individuals or the temporal proximity between the [plaintiff's] protected conduct and the official's adverse action' may be sufficient to 'create an inference of retaliatory motive.'" *Id.*

(quoting *Hill*, 630 F.3d at 475–76). And, "[t]his standard 'includes liability for acts giving rise to the ultimate harm, even if the harm is executed by someone else.'" *Id.* (quoting *Zamiara*, 680 F.3d at 695).

Here, Plaintiff relies on two categories of circumstantial evidence to support his contentions. First, Plaintiff argues that he was transferred to TTCC unexpectedly approximately one week after the Eastern District partially screened his initial complaint and transferred the case to this District. (Doc. No. 12.) That temporal proximity combined with his allegation that, on the day he was transferred, he was the lone transferee sent for permanent relocation to any other prison facility, he argues, can lead to an inference that the sudden transfer was motivated, at least in part, by Plaintiff initiating this action. (*Id.*) Plaintiff further states that, two days after his transfer, another inmate litigating an action against NECX and TDOC personnel was similarly transferred to TTCC. Defendants argue that Plaintiff's transfer could not have been motivated by bringing this suit because Defendants were not served process for this suit until months after Plaintiff was relocated to TTCC and because Plaintiff has pointed to no other evidence that Defendants had knowledge of the "low-stakes lawsuit." (Doc. No. 24 at 11–12.) Defendants further argue that, under the circumstances, there is nothing shocking or financially impactful about book-ordering litigation that would give rise to an inference of retaliatory motive. (Doc. No. 24.)

Without considering the conclusory allegations Plaintiff included in his briefings, the Court finds that, under these circumstances and in the light most favorable to Plaintiff, he has narrowly satisfied his burden and pleaded facts that could permit a finding of retaliatory motive. Plaintiff's allegations, if true and considered alongside the record evidence showing he twice filed grievances regarding the policy at issue, one could plausibly find that Defendants allowed the grievance and

federal screening processes to conclude and, once the complaint advanced, chose to permanently transfer Plaintiff to a notoriously violent prison.

The record reflects not only that both of Plaintiff's appeals made it to Defendant Thomas's office and were denied by an individual in that office (Doc. No. 2-1), but record evidence also illustrates that at least one NECX Correctional Officer told the reviewing Grievance Board that it was Defendant Thomas who instituted the restrictive policy (*id.*). At minimum, this calls into question Defendants lacked knowledge of Plaintiff engaging in protected conduct to challenge the policy.

Under the totality of the circumstances here, the Court finds that, as in *Hill*, Plaintiff's Complaint is "sufficient to establish the retaliatory-motive element when scrutinized under the failure-to-state-a-claim standard." 630 F.3d at 476 (citing *Iqbal*, 566 U.S. at 677).

## IV. Conclusion

In briefing Defendants' Motion to Dismiss under Rule 12(b)(6), the parties focused on narrow and specific issues. As framed, the Court finds that Plaintiff has sufficiently pleaded facts to survive the bases on which Defendants seek dismissal.

## V. Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. No. 23) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 4th day of March, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge

14