IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN JOSEPH KRATOCHVIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:24-cv-01042 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| FRANK STRADA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Pending before the Court[1] is the report and recommendation (Doc. No. 30, "R&R") of the

Magistrate Judge, which recommends that the Court deny the motion to dismiss (Doc. No. 23,

"Motion") filed by Defendants, Frank Strada and L. R. Thomas (collectively, "Defendants").

Defendants have filed Objections (Doc. No. 32, "Objections")[2] to the R&R. For the reasons stated

herein, the Court will adopt the R&R with the caveats discussed below.

Below, the Court first will review the relevant procedural and factual background. The

Court next will provide an examination of the substance of the R&R before then reviewing the

legal standard for a district court judge's review of the report and recommendation of a magistrate

judge. The Court will then analyze Defendants' Objections to the R&R and review (as necessary)

any portions of the Magistrate Judge's R&R to which a proper objection was made by Defendants.

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Herein, a given use of the term "Objections" may refer to the document (Doc. No. 32) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Objections"), or both.

<u>BACKGROUND</u>

**A.      Procedural History**

Absent any objection to the statement of procedural history set forth by the Magistrate

Judge in the R&R, the Court adopts that procedural history in its entirety and quotes it here

(including the sole footnote appended by the Magistrate Judge to this statement, which is included

here as footnote 3 herein, albeit with three bracketed words added):

> Plaintiff initiated this Section 1983 action in the Eastern District of
> Tennessee on August 20, 2024, alleging violations of his rights under the First and
> Fourteenth Amendments to the Constitution, violations of his rights under the
> Tennessee Constitution, and violations of Tennessee statutes and regulations. (Doc.
> No. 2.) Alongside his Complaint, Plaintiff applied to proceed *in forma pauperis*
> (IFP). (Doc. No. 1.) The Eastern District approved Plaintiff's application to proceed
> IFP and, on August 27, 2024, the court issued a Memorandum Opinion and Order
> that partially screened Plaintiff's initial complaint as required by the Prison
> Litigation Reform Act, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A). (Doc. No. 5.)
>
> On initial screening, the Eastern District found that Plaintiff's claims
> against Eller did not give rise to a plausible inference that Eller was personally
> involved in the policies at issue and, as a result, were insufficient for showing Eller
> could be held liable for any alleged violations of Plaintiff's constitutional rights.
> (*Id.*) For that reason, the court dismissed Eller as a defendant. (*Id.*)
>
> With Eller dismissed, the court reasoned that, because Plaintiff was
> ultimately challenging policies put forth and enforced by TDOC personnel
> operating out of Nashville, Tennessee, venue in the Eastern District was
> inappropriate. (*Id.*) The case was subsequently transferred to this Court on August
> 27, 2024. (Doc. No. 7.) Within days, Plaintiff was permanently transferred out of
> NECX to the Trousdale Turner Correctional Center (TT[C]C) in Harstville,
> Tennessee. (Doc. No. 13.)
>
> Because the Eastern District ended its screening after determining that the
> case should be transferred, it deferred screening the remainder of Plaintiff's
> Complaint. Upon its initial review, this Court addressed the claims against Strada
> and Thomas; denied Plaintiff's motion to reconsider the Eastern District's decision
> to dismiss Eller (Doc. No. 11); and granted Plaintiff's Motion to Supplement[3] (Doc.
> No. 12).

---

[3] Although [this motion was] styled as a Motion to Amend his Complaint (Doc. No. 12), the Court construed
it as a Motion to Supplement under Federal Rule of Civil Procedure 15(d) (Doc. No. 13).

> After reviewing Plaintiff's initial and supplemental complaints, the Court permitted Plaintiff's original First Amendment claims against Strada and Thomas to proceed. (Doc. No. 13.) The Court further found that Plaintiff raised in his Supplemental Complaint plausible claims of First Amendment retaliation against the Defendants stemming from his transfer to TTCC after undertaking the grievance process and then filing this action. (*Id.*) The Court referred the case to the Magistrate Judge to conduct further proceedings and dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B). (*Id.*)
>
> Defendants filed their Motion to Dismiss and Memorandum in Support on April 10, 2025 (Doc. Nos. 23, 24), to which Plaintiff responded in opposition (Doc. No. 26). Defendants then filed an optional reply brief. (Doc. No. 27.) The motion has been fully briefed and is ripe for consideration.

(Doc. No. 30 at 2-4). In Defendants' Motion, Defendants assert that the Court should dismiss both of Plaintiff's claims. (Doc. No. 23 at 1). First, Defendants move the Court to dismiss Plaintiff's First Amendment freedom of speech claim ("Free Speech Claim"), asserting that "Plaintiff lacks standing to sue Defendants . . . because he has not adequately alleged an injury." (*Id.*). Second, Defendants move the Court to dismiss Plaintiff's First Amendment retaliation claim ("Retaliation Claim"), asserting both that Plaintiff "has not sufficiently alleged an adverse action against him by Defendants" and that Plaintiff "has not sufficiently alleged . . . the requisite motive to make such action retaliatory." (*Id.*).

### B. Factual Background[4]

---

[4] Because the Objections challenge the Magistrate Judge's framing of Plaintiff's allegations, the Court will provide its own recitation of the relevant facts as the Court understands they should be accepted for purposes of the instant Motion.

The facts contained in this section come from Plaintiff's Complaint (Doc. No. 2) and supplemental complaint (Doc. No. 12, "Supplemental Complaint"). For purposes of the instant Motion and pursuant to the typical mechanisms of assessing motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts alleged in the Complaint and Supplemental Complaint as true. But the Court does not accept as true any legal conclusions (even if couched as facts). As for any representation in the Complaint and/or Supplemental Complaint that the Court is *not* accepting as true, the Court generally identifies it by qualifying it (as, for example, by "Plaintiff alleges") to denote that it is not being taken as true but rather is set forth to indicate what Plaintiff *claims* to be true. Throughout this Order, except as indicated in the next sentence, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even with the awareness that any such alleged fact may ultimately prove false. Having said that, at times when assessing whether Plaintiff has alleged factual matter sufficient to support its respective claims, the Court does point out that it is basing its assessment on the facts alleged in the

At the time Plaintiff filed the Complaint, he was an inmate incarcerated at the Tennessee Department of Correction at Northeast Correctional Complex ("NECX") in Mountain City, Tennessee. (Doc. No. 2 at 2).[5] Between April 1, 2024 and the filing of the Complaint, "inmates [were] completely cut-off from all possible ways to order and/or receive books and other printed material." (*Id.* at 10).

Plaintiff "sent in a book order the first week in April to come from Hamilton Books," but "was told that all book orders [going to Unit Manager Reburn] for approval [would] be denied until the situation with Union Supply[6] is settled." (*Id.* at 7). In response, Plaintiff filed two separate grievances: the first was filed on May 6, 2024 ("First Grievance"), and the second was filed on June 18, 2024 ("Second Grievance"). (*Id.* at 2-4). On May 9, 2024, Plaintiff received from Seargent Phillips a response after the First Grievance, which stated, "As of April 1, 2024, Intake was instructed by Administration of NECX not to let offenders have books" ("Policy of Suspending Books"). (*Id.* at 2). Dissatisfied with the response, Plaintiff requested a hearing before the Grievance Board ("Board"), and after a May 15, 2024 hearing, the Board agreed to forward Plaintiff's grievance to NECX Warden Brian Eller. (*Id.* at 2-3). On May 20, 2024, "Warden Eller denied the appeal stating, 'This is only temporary until a vendor is approved.'" (*Id.* at 3).

After filing the Second Grievance, Plaintiff was told by the NECX Associate Warden of Treatment that the Tennessee Department of Correction ("TDOC") has the authority to limit which

---

Complaint and Supplemental Complaint; in that particular context, the Court does use the phrase "Plaintiff alleges" to precede the facts alleged, even though the Court is taking those facts as true for purposes of the Motion.

[5] The Complaint has two sets of page numbers: the page numbers found in black on the bottom right-hand corner ("Set 1") and the page numbers found in blue at the bottom of the page ("Set 2"). When citing to the Complaint, the Court uses Set 2's page numbers as Set 1 appears to skip page one of the Complaint.

[6] It is the Court's understanding that Union Supply is the distributor of personal packages within NECX. (Doc. No. 2 at 3 and 9).

vendors may be approved and to regulate which books may be ordered based on their content. (*Id.* at 3-4). On appeal, Eller concurred with the decision, and the subsequent appeal to TDOC was denied by Assistant Commissioner Thomas's office. (*Id.* at 4).

"On July 17, 2024, inmates at [NECX] received a memo from Assistant Commissioner Thomas dated July 15, 2024," which stated a policy ("Two-Vendor Policy") that books "are now to be ordered through staff from only two (2) distributors for non-religious books: 1) Abebooks.com and (2) Bookshop.org." (*Id.* at 7). The Two-Vendor Policy "appears to eliminate newspapers, magazines, periodicals, and other printed material," (*id.*) and "limits the number of books an inmate can order to five (5)" (*id.* at 12). Plaintiff "has been ordering and receiving books from Edward R. Hamilton Bookseller Company for approximately thirteen (13) years, as well as from other distributors." (*Id.* at 7).

As discussed above, after filing the Complaint, Plaintiff filed a supplemental complaint (Doc. No. 12, "Supplemental Complaint") outlining conduct that occurred after the filing of the Complaint. "One week following the Judgment Order" of the Eastern District—wherein the Eastern District partially screened the Complaint and transferred the case to this District—Plaintiff was subjected to a transfer ("Transfer") from NECX to Trousdale Turner Correctional Center ("TTCC"): a prison within this district (the Middle District of Tennessee) that is notoriously violent and is currently under federal civil rights investigation. (*Id.* at 1-2). The Transfer cost him his "good paying and rewarding job as a tutor in the GED program" at NECX. (*Id.* at 2). Plaintiff does not have a job at TTCC. (*Id.*). Two days after his Transfer, another inmate "who is filing a similar lawsuit" was likewise transferred to TTCC. (*Id.*).

<u>THE MAGISTRATE JUDGE'S R&R</u>

The R&R recommended denial of Defendants' Motion, finding that Plaintiff's Free Speech Claim and Retaliation Claim should survive the Motion. (Doc. No. 30 at 1).

First, as it relates to Plaintiff's Free Speech Claim, the Magistrate Judge pointed out that "Defendants sidestep the constitutional question and argue instead that Plaintiff's First Amendment claim must be dismissed because Plaintiff does not have standing to seek redress." (*Id.* at 5). The Magistrate Judge emphasized that because "Defendants argue only that Plaintiff has not adequately pleaded that he suffered an injury in fact," (*id.* at 6), she "will not examine the other necessary elements of Plaintiff's standing to bring suit" (*id.* at 8). Ultimately, the Magistrate Judge concluded "that Plaintiff has sufficiently pleaded facts that, on their face, plausibly show he suffered a concrete and particularized invasion of his First Amendment right to receive information and ideas, including mail and reading material, that is not merely conjectural or hypothetical." (*Id.* at 7). In reaching that conclusion, the Magistrate Judge framed the relevant facts as follows:

> Plaintiff plainly states that, after the [T]wo-[V]endor [P]olicy took effect, Plaintiff was barred from ordering or receiving any books or publications. (Doc. No. 2.) Defendants rely on Plaintiff's broad generalizations of the impact of the policy to argue that he, himself, suffered no particular harm. Moreover, they suggest that he is attempting to rectify injuries allegedly suffered by other inmates or third-party publishers. However, Plaintiff states, in full:
>
> > 3. The Plaintiff has been ordering and receiving books from Edward R. Hamilton Bookseller Company for approximately thirteen (13) years, as well as from other distributors.
> > 4. Plaintiff sent in a book order the first week in April to come from Hamilton Books, and when he received no answer concerning the Trust Fund approval, he questioned Unit Manager Reburn since Trust Fund requests from Complex III go to him for approval.
> > 5. Plaintiff was told that all book orders coming to him for approval will be denied until the situation with Union Supply is settled.
>
> (*Id.* at 7.) Frustrated by this, Plaintiff used the internal grievance process to object to "banning [inmates] from ordering books." (Doc. No. 2-1.) Instead of disputing Plaintiff's

contention, the Warden and staff at NECX stated simply that "this [barring Plaintiff from ordering books] is only temporary until a vendor can be approved." (*Id.*)

(Doc. No. 30 at 7).

Second, as it relates to Plaintiff's Retaliation Claim, the Magistrate Judge recommended denying dismissal, finding that Plaintiff had plausibly pled all three elements of a First Amendment retaliation claim:

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.

(*Id.* at 8 (quoting *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (internal citation and quotation omitted))).

Notably, although Defendants brought challenges only as to the second and third element of a First Amendment retaliation claim, the Magistrate Judge nonetheless found that "Plaintiff ha[d] plainly satisfied the first element because his 'undisputed First Amendment right to file grievances against prison officials on his own behalf' is protected conduct." (*Id.* at 9 (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Thereafter, the Magistrate Judge found that Plaintiff had alleged factual matter plausibly suggesting fulfilment of elements two and three as well, stating that Plaintiff "sufficiently pleaded facts that his Transfer to TTCC was an adverse action for purposes of a First Amendment retaliation claim," (i.e., element two) (*id.* at 11), and that "Plaintiff's Complaint is 'sufficient to establish the retaliatory-motive element when scrutinized under the failure-to-state-a-claim standard'" (i.e., element three) (*id.* at 13 (quoting *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010) (citing *Iqbal*, 566 U.S. at 677))).

LEGAL STANDARD FOR THE REVIEW OF REPORTS & RECOMMENDATIONS

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court judge shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which a *proper* objection is made.

Fed. R. Civ. P. 72(b)(3); 28 U.S.C.A. § 636(b)(1).[7] The district judge may accept, reject, or modify

the recommended disposition, review further evidence, or return the matter to the magistrate judge

with instructions. *Id.*

A district judge is not required to review, under a *de novo* or any other standard, those

aspects of a report and recommendation to which no proper objection is made. *Ashraf v. Adventist*

*Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*,

---

[7] Significantly, and perhaps surprisingly, the statute does not actually direct the district judge to expressly rule on the objections themselves (i.e., expressly sustain or reject the objector's *specific* criticism(s) of what the magistrate judge did). Instead of requiring the district judge to determine *the* validity of the objections to what the magistrate judge did, the statute requires the district judge to make a determination—*de novo*, which inherently means ultimately without reference to whether what the magistrate judge did was objectionable—of the portion(s) of the report and recommendation to which objection was made. Moreover, since the review of the objected-to portions of the report and recommendation is *de novo*, any critiquing of what the magistrate judge did ultimately would be dicta (albeit relevant and probative dicta to the extent that such critiquing explains the analysis underlying the district judge's determination of the objected-to portions of the R&R). Additionally, district judges in this Circuit not infrequently either decline to rule (or, to the same effect, deny as moot) particular objections on the specific ground that so doing is unnecessary to rule on the objected-to portion of the report and recommendation. *E.g., Collins v. Bright*, No. 2:13-CV-02987-JPM-CGC, 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) ("This Court need not resolve all of the objections," because only some of them needed to be addressed in order to resolve the motion that was the subject of the report and recommendation); *Weatherspoon v. Williams*, No. 2:14-CV-108, 2016 WL 6070994, at *1 (W.D. Mich. Oct. 17, 2016) ("Plaintiff's objections are irrelevant and will be denied."); *Bowers v. Burnett*, No. 1:08-CV-469, 2011 WL 1047343, at *2 n.1 (W.D. Mich. Mar. 18, 2011) (noting that the Court need not resolve an objection to the extent that the objector's position on the R&R has other fatal deficiencies); *Powell v. Alcoa High Sch.*, No. 3:10-CV-212, 2010 WL 2598260, at *2 (E.D. Tenn. June 24, 2010) ("Because this objection is irrelevant to [the magistrate judge's] recommendations, it is hereby overruled.") *Cline v. Kelly*, No. 09CV859, 2010 WL 1006529, at *9 n.1 (N.D. Ohio Mar. 16, 2010) ("The Court acknowledges [the petitioner's] objection, but need not resolve it because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition" that the magistrate judge had recommended be denied.).

Thus, although it seems clear that the district judge *can* expressly rule on the objections, the Court concludes that a district judge is not required to do so. Herein, the Court does expressly rule on Objection 2. Otherwise, the Court declines to rule herein specifically on the Objections, focusing instead on the required *de novo* review and determination of the objected-to parts of the R&R—albeit in part by taking account of any ways in which the objections shed light on what the Court's ultimate determination should be.

No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

"Only 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Furthermore, Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of a magistrate judge's report or proposed findings or recommendations to which an objection is made. L.R. 72.02(a); *see also See* Fed. R. Civ. P. 72(b)(2). Significantly, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotations omitted). In other words, "the district court need not provide *de novo* review," or any other type of review, "where the objections are 'frivolous, conclusive or general,'" and therefore improperly made. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). *See also Ashraf*, 322 F. Supp. 3d at 881 ("The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made." (citation omitted)); *Benson*, 2018 WL 6322332, at *3 (same).

<u>ANALYSIS OF DEFENDANTS' OBJECTIONS AND REVIEW OF THE R&R</u>

Defendants have filed four Objections to the R&R. The first objection ("Objection 1") relates to Plaintiff's Free Speech Claim and challenges the Magistrate Judge's finding that Plaintiff plausibly pled an "injury in fact" sufficient to have standing to bring his Free Speech Claim. (Doc.

No. 32 at 2-6). The remaining three objections relate to Plaintiff's Retaliation Claim. (*Id.* at 6-10). More specifically, the second objection ("Objection 2") challenges how the Magistrate Judge framed the protected conduct that underlies Plaintiff's Retaliation Claim, (*id.* at 6-7); the third objection ("Objection 3") challenges the Magistrate Judge's finding that Plaintiff plausibly pled an adverse action to support his Retaliation Claim, (*id.* at 7-8); and the fourth objection ("Objection 4") challenges the Magistrate Judge's finding that Plaintiff plausibly pled a retaliatory motive to support his Retaliation Claim, (*id.* at 8-10). The Court will sequence its analysis by claim.

### I. Free Speech Claim

As discussed above, only one of Defendant's Objections (i.e., Objection 1) relates to the Free Speech Claim. Objection 1 challenges the Magistrate Judge's conclusion that Plaintiff alleged factual matter plausibly suggesting that he suffered an "injury in fact" sufficient to have standing to bring his Free Speech Claim. Because Objection 1 is specific, written, and a proper objection warranting *de novo* review, the Court will conduct a *de novo* review of that portion of the R&R that Objection 1 challenges.

Importantly, "[t]he First Amendment protects 'the right to receive information and ideas,'" which, as applicable in the prison context, extends to the right to receive mail and to access reading material." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). It is this Court's understanding[8] that Plaintiff's Free Speech Claim challenges not only the new policy contained in the memo dated July 15, 2024 (i.e., the Two-

---

[8] The Court arrives at this understanding based on Plaintiff's Complaint. In the "Statement of Claims" section of the Complaint, Plaintiff makes two statements of relevance. Plaintiff states first that it is his "contention that the current policy of suspending all book orders and other printed material and the receiving of books in the mail violates due process and the First Amendment," and second that he "contends that the new policy contained in the memo dated July 15, 2024, allowing books to be ordered from only two (2) distributors for non-religious books violates due process and the First Amendment." (Doc. No. 2 at 5). The Court interprets these contentions as challenges to both the Book Suspension Policy and Two-Vendor Policy, respectively.

Vendor Policy), but also the (prior) policy of suspending all book orders as of April 1, 2024 (i.e., the Book Suspension Policy). (Doc. No. 2 at 5).

Construing the Complaint in Plaintiff's favor as required at the current motion-to-dismiss phase, the Court agrees with the Magistrate Judge that "Plaintiff has sufficiently pleaded facts that, on their face, plausibly show he suffered a concrete and particularized invasion of his First Amendment right to receive information and ideas, including mail and reading material, that is not merely conjectural or hypothetical." (Doc. No. 30 at 7).

Plaintiff alleged that he sent in a book order the first week in April 2024, (Doc. No. 2 at 7), but was eventually informed—after filing his First Grievance—that "[a]s of April 1, 2024, Intake[9] was instructed by Administration of NECX not to let offenders have books" (i.e., Book Suspension Policy). (*Id.* at 2). Plaintiff alleged that on "[o]n July 17, 2024, inmates at [NECX] received a memo from Assistant Commissioner Thomas dated July 15, 2024," stating that books "are now to be ordered through staff from only two (2) distributors for non-religious books: 1) Abebooks.com and (2) Bookshop.org" (i.e., Two-Vendor Policy). (*Id.* at 7). Plaintiff alleges that the Two-Vendor Policy "appears to eliminate newspapers, magazines, periodicals, and other printed material," (*id.*) and "limits the number of books an inmate can order to five (5)" (*id.* at 12). At the time of his initial Complaint, Plaintiff alleged that since April 1, 2024, "inmates have been completely cut-off from all possible ways to order and/or receive books and other printed material." (*Id.* at 10).

From the aforementioned, the Court finds that Plaintiff has alleged factual matter plausibly suggesting that he himself—as well as other inmates—have been unable to order or receive any

---

[9] It is the Court's understanding that "Intake" refers to the department that screens packages—among other things—before items can enter the prison and be distributed to the prisoners. (Doc. No. 2 at 2 ("Intake was instructed by Administration of NECX not to let offenders have books."); 10 ("[T]he Mailroom/Intake also has an x-ray machine.")

books or publications[10] from any source outside the facility since April 1, 2024, due to the policies implemented by NECX: whether that be by virtue of the Book Suspension Policy, the Two-Vendor Policy, or a combination of both. This alleged harm is certainly not conjectural or hypothetical but instead appears to be quite concrete and particularized to Plaintiff. The Court ultimately agrees with the Magistrate Judge's statement that "Plaintiff has pleaded sufficient facts plausibly showing he suffered a concrete and particularized invasion of his rights sufficient to be an injury in fact. Plaintiff has a right to receive reading materials." (Doc. No. 30 at 7).

In sum, the Court will adopt and approve the portion of the R&R recommending denial of the Motion as it relates to Plaintiff's Free Speech Claim. In so doing, the Court notes that it finds that that recommendation actually is supported by something that the Magistrate Judge appears not to have relied on: Plaintiff's allegations of injury-in-fact stemming from the Book Suspension Policy (which the Court relies on in addition to Plaintiff's allegations of injury-in-fact stemming from the Two-Vendor Policy, which appears to be the sole policy discussed by the Magistrate Judge in connection with this recommendation.)

## II.        Retaliation Claim

As discussed above, the final three Objections (i.e., Objection 2, Objection 3, and Objection 4) relate to Plaintiff's Retaliation Claim. To establish a First Amendment retaliation claim, an inmate must "prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of ordinary firmness from continuing to engage in that

---

[10] Limiting one's access to publication necessarily implicates one's First Amendment right to free speech because "[t]he First Amendment protects 'the right to receive information and ideas.'" *Bethel*, 988 F.3d at 938 (quoting *Kleindienst*, 408 U.S. at 762). *Accord Kleindienst*, 408 U.S. at 762-63 (1972) ("It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom (of speech and press) . . . necessarily protects the right to receive. . . .'" (quoting *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) (internal citations and quotations omitted))).

conduct, and (3) the adverse action was motivated at least in part by the prisoner's protected

conduct" (The Court refers to these respectively as "Element 1," "Element 2," and "Element 3").

*Hill*, 630 F.3d at 472 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en

banc)).[11]

The Court discerns that via Objection 2, Defendants are objecting not to the Magistrate

Judge's ultimate conclusion that Element 1 of Plaintiff's Retaliation Claim has been "satisfied,"[12]

(Doc. No. 30 at 9), but rather to the Magistrate Judge's finding that the protected conduct was

Plaintiff's submission of multiple grievance filings (as opposed to Plaintiff's filing of the

Complaint in the present action). (Doc. No. 32 at 7 ("[Plaintiff] never alleged that his grievances

are the protected conduct that spurred his [T]ransfer")). Because Objection 2 is a specific, written

objection, the Court will conduct a *de novo* review of the portion of the R&R that Objection 2

---

[11] In their Memorandum, relying on *Hill,* Defendants take the position that Plaintiff must establish these three things to establish a First Amendment retaliation claim. (Doc. No. 24 at 8). The Court accepts Defendants' position on this point for present purposes (i.e., on a motion to dismiss), though not necessarily for any future purposes.

[12] If Defendants were attempting to assert via this Objection that Plaintiff did not engage in *any* protected conduct that could support Plaintiff's Retaliation Claim, such would be improper at this stage. This is because in Defendants' Motion, Defendants sought dismissal of Plaintiff's Retaliation Claim by challenging fulfilment of Element 2 (i.e., adverse action) and Element 3 (i.e., causal connection) of a retaliation claim, but Defendants did not challenge fulfillment of Element 1 (i.e., that Plaintiff engaged in protected conduct).
Importantly, "absent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1070 (N.D. Ohio 2014) (quoting *Murr v. U.S.,* 200 F.3d 895, 902 n.1 (6th Cir. 2000)). *Accord Dykes v. Orsborne*, No. 2:21-CV-113, 2022 WL 17546618, at *2 (W.D. Mich. Dec. 9, 2022) ("Because Plaintiff may not, in an objection to an R&R, raise 'new arguments or issues that were not presented to the magistrate,' Plaintiff waived this argument" (quoting *Murr*, 200 F.3d at 902 n.1)); *Uduko v. Cozzens*, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013) ("Any arguments made for the first time in objections to an R & R are deemed waived." (citing *Murr,* 200 F.3d at 902 n.1)). Accordingly, if Objection 2 was attempting to challenge the *existence* of any protected conduct, such argument has been waived (or, to put it more precisely, forfeited); if Defendants wanted to contest that Plaintiff engaged in protected conduct, Defendants should have proffered such argument in their Motion.

challenges—namely, the portion that identifies the "protected conduct" that underlies Plaintiff's Retaliation Claim.

The filing of grievances against prison officials can qualify as protected conduct. *Herron*, 203 F.3d at 415 (finding that filing grievances against prison officials is protected conduct "if the grievances are not frivolous."). However, the Supplemental Complaint makes clear that Plaintiff's Retaliation Claim is premised on his filing of the Complaint in this action, not his submission of grievances. For example, the Supplemental Complaint—wherein Plaintiff asserts his Retaliation Claim—states that "Plaintiff contends that he has been retaliated against for filing his *Complaint* for violation of his Civil Rights." (Doc. No. 12 at 1 (emphasis added)). The Supplemental Complaint goes on to outline the timing of his filing of the Complaint and his subsequent Transfer to TTCC, but makes no mention of the grievances that he filed with NECX. (*Id.* at 1-2). For this reason, the Court expressly sustains Objection 2. Nonetheless, because "[f]iling a nonfrivolous prisoner civil-rights lawsuit constitutes protected conduct," *Bocook v. Wittrup*, No. 22-3383, 2023 WL 3467006, at *2 (6th Cir. Apr. 10, 2023) (citing *Thaddeus-X*, 175 F.3d at 394), the sustaining of the objection does not change the relevant result (or the validity of the relevant recommendation of the magistrate judge) with respect to the instant Motion: Element 1 of Plaintiff's Retaliation Claim is satisfied. On the other hand, the sustaining of Objection 2 has consequences for this case as it progresses; namely, the Court will hold Plaintiff to the theory that his protected conduct was the filing of the Complaint in this action ("Protected Conduct") (and *only* the filing of the Complaint in this action).

Objection 3 and Objection 4 challenge the Magistrate Judge's analysis regarding whether Plaintiff plausibly pled Elements 2 and 3 of his Retaliation Claim. (Doc. No. 32 at 7-10). Because they are specific and written objections, the Court will conduct a *de novo* review of those portions

of the R&R that these objections challenge. Ultimately, after conducting such review, the Court agrees and adopts the Magistrate Judge's conclusion that Plaintiff has alleged facts plausibly suggesting satisfaction of Elements 2 and 3 of his Retaliation Claim.

Element 2 of a First Amendment retaliation claim is that Defendants took some "adverse action" against Plaintiff. See *Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024). "The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to fire, nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (citing *Thaddeus-X*, 175 F.3d at 396). However, the concept of an adverse action is broader in the context of retaliation claims (as opposed to class-based employment discrimination claims)—including claims of First Amendment retaliation, in which context it includes "action[s] that 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Josephson*, 115 F.4th at 787 (quoting *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (quotation omitted)). Ultimately, "[t]he adverse nature of a particular action 'will depend on context.'" *Id.* (quoting *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (internal quotations and citations omitted)). This Court has explained that "[e]ven though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the [State] may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights." *Atkins v. Sutton*, No. 3:25-CV-115, 2026 WL 18902, at *3 (M.D. Tenn. Jan. 2, 2026) (Trauger, J.) (quoting *Hill*, 630 F.3d at 473). "[A] prison transfer . . . can be an adverse action if that transfer would result in foreseeable, negative consequences *to the particular prisoner*." *Hill*, 630 F.3d at 475 (emphasis added) (citation omitted).

Element 3 is that the "adverse action was motivated at least in part by the prisoner's protected conduct." *Id.* Element 3 of a First Amendment retaliation claim "looks at the defendant's subjective motivation for taking the alleged adverse action." *Heyward v. Cooper*, 88 F.4th 648, 657 (6th Cir. 2023) (citing *Hill*, 630 F.3d at 475). The Sixth Circuit has taught that "a 'motivating factor' is *essentially* but--for cause--'without which the action being challenged simply would not have been taken.'" *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (emphasis added) (quoting *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)).

Notably, Sixth Circuit precedent may foster some uncertainty "over whether a plaintiff must prove this but-for test or whether the plaintiff need only show that the protected conduct was a motivating factor for the action (which switches the burden to the defendant to prove the absence of but-for causation)." *Rudd v. City of Norton Shores*, 977 F.3d 503, 515 (6th Cir. 2020). However, the Sixth Circuit has consistently stated that at the motion-to-dismiss phase a Plaintiff simply needs to "provide enough facts to show that 'the adverse action was *motivated at least in part* by [Plaintiff's] protected conduct.'" *Hardrick v. Huss*, 155 F.4th 518, 527 (6th Cir. 2025) (emphasis added) (quoting *Heyward*, 88 F.4th at 657 (citation omitted)); *see also Hill*, 630 F.3d at 475 ("The third element that [the plaintiff] must establish for his retaliation claim . . . is that the adverse action was motivated at least in part by the prisoner's protected conduct." (citation omitted)); *Fritz*, 592 F.3d at 729 (holding that plaintiff alleged facts plausibly suggesting that the "adverse actions were motivated, at least in part, by her protected conduct," sufficient to survive the motion to dismiss.). In other words, Plaintiff need only allege facts plausibly suggesting that the adverse action was motivated in part by his protected conduct. The Sixth Circuit "has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive," but "it has been reluctant to find that such evidence alone

establishes retaliatory motive." *Hill*, 630 F.3d at 476. However, "on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but . . . often evidence in addition to temporal proximity is required to permit the inference." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

The Court will analyze Element 2 and Element 3 in turn. First, with respect to Element 2, Plaintiff alleges that the adverse action was his Transfer to TTCC. (Doc. No. 12 at 1). The Court finds that Plaintiff has alleged factual matter plausibly suggesting that the Transfer would qualify as an adverse action because the Transfer resulted in "foreseeable, negative consequences," *Hill*, 630 F.3d at 475, to Plaintiff that "would chill or silence a person of ordinary firmness from future First Amendment activities," *Josephson*, 115 F.4th at 787 (quoting *Benison*, 765 F.3d at 659 (quotation omitted)). Here, Plaintiff has alleged factual matter plausibly suggesting that his Transfer led to a number of foreseeable negative consequences, such as loss of a high-wage job (Doc. No. 12 at 2 ("The Plaintiff went from a good paying and rewarding job as a tutor in the GED program to no job at all.")), and transfer to an institution with more violent, higher-classification inmates (*id.* at 1-2 (alleging that TTCC "is one of, if not, the most violent prisons in Tennessee," and is "currently under Federal investigation stemming from approximately forty-three (43) killings, corruption within the administration, and other civil rights violations.")). *See e.g.*, *Adams v. Lewis*, No. 1:22-CV-125-SKL, 2024 WL 1539426, at *6 (E.D. Tenn. Apr. 9, 2024) ("Here, Plaintiff has presented evidence that that his transfer led to a number of foreseeable consequences, such as the loss of property; *loss of a high-wage job*; loss of participation in rehabilitative, vocational, and educational programs; loss of more lenient access to recreation and the law library; and *transfer to an institution housing more violent, higher-classification inmates*. Such consequences could constitute an adverse action." (emphasis added) (internal citations omitted)

(collecting cases)). Therefore, the Court finds that Plaintiff has alleged factual matter showing that the Transfer resulted in "foreseeable, negative consequences," *Hill*, 630 F.3d at 475, that would deter a person of ordinary firmness from engaging in the Protected Conduct. Therefore, for the reasons outlined above, the Court finds that at the present (motion-to-dismiss) phase, the Transfer qualifies as an adverse action.

Second, with respect to Element 3, at the motion-to-dismiss phase, a plaintiff need only "provide enough facts to show that 'the adverse action was *motivated at least in part* by [Plaintiff's] protected conduct.'" *Hardrick*, 155 F.4th at 527 (emphasis added) (quoting *Heyward*, 88 F.4th at 657 (citation omitted)). So, to survive the instant Motion, Plaintiff need only allege facts plausibly suggesting that the adverse action was motivated—at least in part—by Plaintiff's filing of the Complaint in the instant action (i.e., Protected Conduct). Ultimately, the Court finds that Plaintiff has alleged facts from which the Court can reasonably infer that the adverse action was motivated at least in part by Plaintiff's Protected Conduct. The Court finds such inference permissible in light of the temporal proximity between Protected Conduct and the Transfer as well as the other alleged surrounding circumstances. First, Plaintiff alleges that he unexpectedly was transferred to TTCC approximately two weeks after he initially filed the Complaint and approximately one week after the Eastern District partially screened his Complaint and transferred the case to this District. (Doc. No. 12 at 1). The Court finds that given the very close proximity between the Protected Activity and the alleged adverse action, this situation would likely qualify as the kind of "particular set of facts . . . [that] could permit an inference of retaliatory motive." *Vereecke*, 609 F.3d at 401 ("[O]n a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive."). However, Plaintiff relied not solely on temporal proximity, but also on additional factual matter from which the Court can infer a retaliatory motive,

namely that two days after his Transfer, another inmate who was filing a similar type of lawsuit was similarly transferred to TTCC. (Doc. No. 12 at 2 ("On September 5, 2024, another inmate, Howard Atkins, who is filing a similar lawsuit as Plaintiff, was transferred to [TTCC]")). The Court agrees with the Magistrate Judge that Plaintiff "has narrowly satisfied his burden and pleaded facts that could permit a finding of retaliatory motive." (Doc. No. 30 at 12).

This conclusion is further supported by the requirement that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted). *Accord Bawcom v. Roades*, No. 3:22-CV-00923, 2023 U.S. Dist. LEXIS 13432, at *3-4 (M.D. Tenn. Jan. 26, 2023) (Richardson, J.) ("Pro se pleadings must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers." (internal citations and quotations omitted)). The Court agrees with the Magistrate Judge that "[u]nder the totality of the circumstances here, the Court finds that . . . Plaintiff's Complaint is 'sufficient to establish the retaliatory-motive element when scrutinized under the failure-to-state-a-claim standard,'" albeit a close call. (Doc. No. 30 at 13 (quoting *Hill*, 630 F.3d at 476 (citing *Iqbal*, 566 U.S. at 677))).[13]

After conducting a *de novo* review of those portions of the R&R to which Plaintiff objected through Objection 3 and Objection 4, the Court agrees with the Magistrate Judge that Plaintiff has alleged facts plausibly suggesting fulfillment of Elements 2 and 3 of his Retaliation Claim.

Accordingly, at this early stage of the case, the Court concludes that Plaintiff's Retaliation Claim passes muster. Therefore, the Court will adopt and approve the portion of the R&R recommending denial of the Motion as it relates to Plaintiff's Retaliation Claim, with the

---

[13] It goes almost without saying that this suggestion (i.e., that Defendants had a retaliatory motive when transferring Plaintiff) could be put to the test at later stages of litigation.

caveat (consistent with the above-discussed sustaining of Objection 2) that the Court clarifies that the "protected conduct" that supports the Retaliation Claim is the filing of the Complaint in the instant action, and not Plaintiff's submission of grievances (or anything else, for that matter).

CONCLUSION

Accordingly, for the reasons described herein, the Court will adopt and approve the R&R (Doc. No. 30), except as to its portion finding that the protected conduct that supported the Retaliation Claim was Plaintiff's grievance filings. With the caveat in the prior sentence, the Court will **DENY** Defendants' Motion (Doc. No. 23).

An appropriate corresponding order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE